Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Eduard Korsinsky (to be admitted *pro hac vice*)
Email: ek@zlk.com
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

Donald J. Enright (to be admitted *pro hac vice*)
Email: denright@zlk.com
John A. Carriel (to be admitted *pro hac vice*)
Email: jcarriel@zlk.com
**LEVI & KORSINSKY, LLP**
1101 30th St., NW, Ste. 115
Washington, DC 20007
Telephone: (202) 524-4292
Facsimile: (202) 333-2121

*Counsel for Plaintiff Astley Davy*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASTLEY DAVY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>PARAGON COIN, INC., JESSICA VERSTEEG, and EGOR LAVROV,<br><br>    Defendants. | Case No. 18-cv-00671<br><br>**<u>CLASS ACTION</u>**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(a)(1) AND 15(a) OF THE SECURITIES ACT OF 1933**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Astley Davy ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint for violations of Sections 12 and 15 of the Securities Act of 1933 (the "Securities Act"), the following based upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which

included, *inter alia*: documents and solicitation materials released by Defendants (defined below), in connection with the Paragon ICO (defined below), public statements made by Defendants concerning Defendant Paragon Coin, Inc. ("Paragon") and the Paragon ICO, and media publications concerning Paragon and the Paragon ICO. Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this action on behalf of himself and all others similarly situated against Paragon, Jessica VerSteeg ("VerSteeg"), Egor Lavrov ("Lavrov," together with VerSteeg, the "Individual Defendants," and collectively with Paragon, "Defendants") for their violations of Sections 12(a)(1) and 15(a), 15 U.S.C. §§ 77l(a)(1), 77o(a), of the Securities Act. Specifically, in connection with Paragon Initial Coin Offering (the "Paragon ICO"), which ran from approximately August 15, 2017 through October 16, 2017, Defendants raised at least $70 million in digital cryptocurrencies by offering and selling unregistered securities in direct violation of the Securities Act.

2.     From August 15, 2017 through September 15, 2017, Defendants ran the Paragon ICO "presale" during which time they purportedly "sold out" of 70,000,000 ParagonCoins ("PRG Tokens") priced between $0.75 and $0.90 per PRG Token.[1] From September 15, 2017 through October 16, 2017, Defendants ran the Paragon ICO "crowd sale," during which time PRG Tokens were offered and sold for $1 each on the first day and the price thereafter increased by $0.05 per day until the close of the Paragon ICO. Such price increases were clearly designed to entice early investments.[2]

---

[1]  *See* JD Alois, *The Paragon ICO is Just Killing it as the Token Pre-Sale Sells Out*, Crowdfundinsider.com (Sept. 26, 2017, 10:30 p.m.), https://www.crowdfundinsider.com/2017/09/122405-paragon-ico-just-killing-token-pre-sale-sells/.

[2]  To note, Defendants also reduced the prices of PRG Tokens by offering "bonuses" as the Paragon ICO went on, resulting in a baiting of early investors, as well as late or repeat investors. For example, Defendants emailed Plaintiff on September 27, 2017, after he had already invested, a "promo code" offering a 25% bonus on his next purchase of PRG Tokens. As the Paragon ICO neared its conclusion, the offered "bonus" percentages likewise increased. For example, Defendants emailed Plaintiff promo codes on October 3, 2017, and October 12, 2017, offering 40% and 55%, respectively, in bonus PRG Tokens for any subsequent purchase.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

3.      On November 2, 2017, Defendants emailed Paragon ICO investors an update which indicated that during the Paragon ICO "crowd sale" they had collected 533 BTC and 8,092 ETH—worth approximately $7.3 million and $10.2 million, respectively, as of January 12, 2018.  In this update, Defendants also stated that these amounts did not include any of the cryptocurrencies they collected during the Paragon ICO "presale."  Given that Defendants have represented that the Paragon ICO "presale" sold 70,000,000 PRG Tokens at a minimum price of $0.75,[3] and that the Paragon ICO "crowd sale" raised 533 BTC and 8,092 ETH, these representations indicate that Defendants collected at least $70 million during the Paragon ICO.[4]

4.      Defendants' purported goal, or "mission statement," in conducting the Paragon ICO was:

> Paragon seeks to pull the cannabis community from marginalized to mainstream by building blockchain into every step of the cannabis industry and by working toward full legalization. Our strength lies in the unique blockchain/cannabis connection that uses smart contracts. We believe in blockchain, and we believe in the benefits of cannabis. More uses of cannabis are coming to light, and we want to accelerate that process. We believe cannabis is good for individuals and good for countries. We are passionate about moving forward in an ethical, morally responsible, and legal way.[5]

5.      In other words, Defendants marketed the Paragon ICO as offering a path towards legalization of cannabis and a way to solve nearly every issue facing the cannabis industry.  As discussed herein, the Paragon ICO was in actuality a way for Defendants to raise capital to purchase real estate.

6.      Depending on the date in which the investment was made, the core offer during the Paragon ICO was 1 PRG Token for $0.75–$2.50, payable in Bitcoin ("BTC"), Ether ("ETH"), Litecoin ("LTC"), Dashcoin ("DASH"), Zcash ("ZEC"), Ripple ("XRP"), Monero ("XMR"), Ethereum Classic ("ETC"), or Waves coin ("WAVES").  The Paragon ICO was a clear offer and sale of securities,

---

[3] *Supra*, note 1.

[4] One website that tracks the amount of funds raised by initial coin offerings estimates that the Paragon ICO raised over $74 million.  *See* Top10BestUpComingICOS.com, https://top10bestupcomingicos.com/partners/paragon/ (last visited Jan. 30, 2018) (stating the Paragon ICO raised $74,647,589).

[5] *See* Paragon, *Paragon Whitepaper Version 1.0*, (2017), https://paragoncoin.com/whitepaper.pdf at pg. 7.

Case No. 18-cv-00671

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

because, *inter alia*, Defendants advertised, and Plaintiff and other Paragon ICO investors reasonably expected, that the PRG Tokens would be worth more than the ETH, BTC, LTC, DASH, ZEC, XRP, XMR, ETC, or WAVES (collectively, the "Funds") they invested. Additionally, Defendants have explicitly referred to Paragon ICO participants as "investors" and repeatedly stressed their intention to "keep the value of PRG strong and growing,"[6] and that PRG Tokens would be "long term growth assets."[7]

7.      The Securities Act's registration requirements are designed to protect investors by ensuring they are provided adequate information upon which to base their investment decisions. Absent registration, issuers of securities are able to tout their investment opportunities with no limitations whatsoever. For example, an issuer could omit any information that would make a potential investor think twice before investing (*e.g.*, conflicts of interest or major setbacks to core product lines), or peddle its securities using unbounded exaggerations regarding the progress of its products, business plan, business strategies, or even fabricate the existence of relationships with vendors or other business partners.

8.      Due to the varied and innumerable ways in which investors can be, and are likely to be, manipulated and harmed absent any of the protections under the federal securities laws, Sections 5 and 12(a)(1) of the Securities Act provide for strict liability against any person who offers or sells an unregistered security. As detailed herein, the Paragon ICO was, and has been at all times, been an offer and sale of unregistered securities and thus, Defendants are strictly liable under Section 12(a)(1) of the Securities Act.

9.      Importantly, proof of deceptive activity or calculated deprivation of investors' rights and protections under the federal securities laws is not required or determinative as to Plaintiff's claim. This is because Defendants are liable simply by virtue of having offered and sold unregistered securities during the Paragon ICO. Nevertheless, Defendants' deceptive activities are outlined herein to stress the urgency and need for immediate judicial intervention to preserve Plaintiff's and other Paragon ICO investors' significant financial interests which Defendants currently control, and to rectify existing and

---

[6] *Id.* at pg. 15.

[7] *Id.* at pg. 31.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

future irreparable harm to Plaintiff and Paragon ICO investors.  For these reasons, Plaintiff on behalf of himself, and all similarly situated Paragon ICO investors, seeks compensatory, injunctive, and rescissory relief, which would provide rescission and repayment of all investments into the Paragon ICO, as well as secure and conserve such funds until repayment.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 22 of the Securities Act (15 U.S.C. § 77v) because Plaintiff alleges violations of Sections 12(a)(1) and 15(a) of the Securities Act.

11.     This Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this District under Section 22 of the Securities Act, 15 U.S.C. § 77v, as well as under 28 U.S.C. § 1391, because: (a) the conduct at issue took place and had an effect in this District; (b) a substantial portion of the corporate transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

## PARTIES AND RELEVANT NON-PARTIES

13.     Plaintiff invested in the Paragon ICO on September 21, 2017, September 23, 2017, September 28, 2017, September 30, 2017, October 3, 2017, and October 15, 2017, by transmitting 0.04095 BTC, 0.03975 BTC, 0.57855 ETH, 0.0231 BTC, 0.03495 BTC, and 0.04579484 BTC, respectively, to Defendants.

14.     Defendant Paragon is a Delaware corporation that was incorporated on July 6, 2017. Defendant Paragon is controlled by Defendant VerSteeg and Defendant Lavrov.  Defendant Paragon is the "operating entity" for the PRG Token project.[8]

---

[8] *Id.* at 38.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

15.     Defendant VerSteeg is the Chief Executive Officer ("CEO") and founder of Defendant Paragon.   Defendant VerSteeg is a former Miss Iowa and Amazing Race participant.   In 2016, Defendant VerSteeg founded AuBox, a marijuana delivery service, that is "on pause" while Defendant VerSteeg focuses on Defendant Paragon's operations.[9]   Defendant Versteeg resides in the State of California, within the District.

16.     Defendant Lavrov is the "Chief Creative Officer" and founder of Defendant Paragon. Defendant Lavrov describes himself as a "serial entrepreneur" who has had "multiple multimillion dollar exits."  Defendant Lavrov claims to have created numerous successful ventures.  Such ventures have included: two phone game app development companies, Zila Networks and Karma World LLC, and Pravda Sushi Bar & Lounge—all three of which are defunct.  Additionally, Defendant Lavrov founded tattolizator.com, a website launched to run an online contest for artists to submit work that Defendant Lavrov would then have tattooed on himself.  For this project, Defendant Lavrov issued a press release on Business Wire, in which he described himself as a "leading luxury life figure" that was a "cult figure" for a "new group of rich young Russians defined by their conspicuous consumption as well as their open disdain for poverty."[10]  Currently, Defendant Lavrov holds himself out as a venture capitalist that runs "Zila Ventures," which has a team of one—Defendant Lavrov.[11]  Zila Ventures claims to have three portfolio companies: AuBox (Defendant VerSteeg's company); Proffi, Inc. (a company that has no online presence other than a single sentence on the Zila Ventures' website); and Peak Mediation, Inc. (a marketing company that claims to "Guarantee to Double Your Profit").[12] Defendant Lavrov also holds himself out as the CEO of Peak Mediation, Inc.  Defendant Lavrov is believed to have residences in the State of California and the State of Florida.

---

[9] *See* Emerson Woods, *Featured Cannapreneur Jessica Versteeg, CEO of Paragon Coin*, (Oct. 28, 2017), https://cannabismagazine.com/jessica-versteeg-ceo-paragon-coin/.

[10] *See Innovative Tattoo Design Contest at Tattoolizator.com Invites Entrants to make Their Make on a Millionaire*, BusinessWire.com (July 24, 2008), https://www.businesswire.com/news/home/200807 24005337/en/Innovative-Tattoo-Design-Contest-Tattoolizator.com-Invites-Entrants.

[11] *See* ZilaVentures, http://zilaventures.com/ (last visited Jan. 30, 2018).

[12] *See* Peak Mediation, https://peakmediation.com/about.html (last visited Jan. 30, 2018).

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

17.     Defendant VerSteeg and Defendant Lavrov have been married to each other at all relevant times referred to herein.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action individually and as a class action on behalf of all investors in the Paragon ICO who are being, and will be, harmed by Defendants' actions described herein (the "Class"), absent judicial intervention.  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

19.     This action is properly maintainable as a class action under the Federal Rules of Civil Procedure 23.

20.     While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in this Class.  All members of the Class may be identified by records maintained by Defendants and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

21.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following: (i) whether Defendants offered and sold unregistered securities, in violation of the federal securities laws, to the Class during the Paragon ICO; (ii) whether Plaintiff and other Class members will suffer irreparable harm if such securities laws violations are not remedied; and (iii) whether the Class is entitled to injunctive, compensatory, and/or rescissory relief as a result of Defendants' wrongful conduct as alleged herein.

22.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.  Plaintiff and the other members of the Class have all sustained harm in a substantially identical manner as a result of Defendants' wrongful conduct as alleged herein.

23.     Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

24.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

25.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

26.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

27.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury they will continue to suffer absent judicial intervention.

## SUBSTANTIVE ALLEGATIONS

### Background on the Paragon ICO and the Paragon Business Model

28.     On August 15, 2017, Defendants released the *Paragon Whitepaper Version 1.0* (the "Whitepaper").  The Whitepaper described Defendant Paragon as providing solutions for essentially every issue facing the cannabis industry.  The "business model" and Whitepaper—which is replete with buzz-words relating to cryptocurrency technology—can best be described as overly ambitious, vague, and impractical.

29.     The Whitepaper described Defendant Paragon as having five separate business segments:  "ParagonChain," "ParagonCoin," "ParagonSpace," "ParagonOnline," and "ParagonAccelerator."[13]   As detailed below, even individually, each of these segments claims to accomplish fantastic feats and unrealistically address major issues.

30.     "ParagonChain" was described as an "immutable ledger for all industry related data."[14] The Whitepaper continues by explaining that the new "ParagonChain" and its use of "smart contracts" would "save companies hundreds of thousands in reduced paperwork" and provide a "modular toolset

[13] *Supra*, note 5 at pg. 8.

[14] *Id.*

Case No. 18-cv-00671

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

to build applications that can track shipments, verify potency, identify medical patients and their prescriptions, and a host of applications not yet imagined."[15]

31.    "ParagonCoin" was described as "offer[ing] payment for industry related services and supplies."[16]   The Whitepaper further describes "ParagonCoin" as being able to "create a global ecosystem where businesses and consumers can quickly and easily verifiably transfer funds—business to business, business to consumer, and/or consumer to consumer."[17]   Additionally, Defendants stressed: "[w]e want to keep the value of PRG strong and growing."[18]

32.    "ParagonSpace" was described as "establish[ing] niche co-working spaces."[19]   The Whitepaper added: "Our mission is to create a safe physical space where advocates can push to repeal current regulatory restrictions and present information on the benefits of marijuana use for medical conditions, recreational use, and general well being."[20]

33.    "ParagonOnline" was described as "organiz[ing] and unit[ing] global legalization efforts."[21]   The Whitepaper described this segment as "ParagonOnline will act as a one-stop service and platform for cannabis and alternative payment-related scientists, journalists, investors, marketers, doctors, developers, fintech specialists, entrepreneurs, startups, and lawyers.   Because every business is a human venture, the professional networking potential will be highly beneficial.   It will give the cannabis industry a whole new dimension."[22]

34.    "ParagonAccelerator" was described as "bring[ing] standardization of licensing, lab testing, transactions, supply chain and ID verification through apps built" in the accelerator.[23]   The Whitepaper further stated: "The ParagonAccelerator is uniquely linked to the growth of the legal

---

[15] *Id*. at pg. 9.

[16] *Id*. at pg. 8.

[17] *Id*. at pg. 12.

[18] *Id*. at pg. 15.

[19] *Id*. at pg. 8.

[20] *Id*. at pg. 16.

[21] *Id*. at pg. 8.

[22] *Id*. at pg. 21.

[23] *Id*. at pg. 8.

Case No. 18-cv-00671

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

cannabis industry.  Our model grows and develops with the industry autonomously, responding to the demand for new businesses with revolutionary ideas."[24]

35.     While the Whitepaper claimed that there would be five business segments, it is clear that Defendants' actual business model was primarily focused on investing in real estate.  Specifically, the Whitepaper—very briefly–stated, "[t]he lion's share of the token crowdsale [sic] proceeds will be spent on real-estate acquisition."[25]  Evidently, the Paragon ICO was simply a method for Defendants to raise capital in order to purchase real estate investments.

### The Paragon ICO

36.     Defendants began marketing the Paragon ICO in August 2017 by enlisting celebrity endorsers.  For example, in early August 2017, Defendants recruited Jayceon Terrell Taylor, a rapper known as "The Game," to help promote the Paragon ICO.[26]

37.     The Paragon Whitepaper explained that "[a] total of 200,000 PRG will be generated" and that "[t]here will be no further production of tokens so, over time, the tokens in circulation shall reduce in number and increase in demand."[27]

38.     The Paragon ICO was marketed as an investment opportunity for persons interested in the cannabis industry.  For example, the Whitepaper stated, "the token crowdsale [sic] will favor smaller investors who are committed to the cannabis cause and plan on participating in the community."[28]

39.     Defendants explained that their organization and plans would "quickly strengthen the legalization movement and [was] expected to positively influence the demand for and respectively value of Paragon's cryptocurrency, PRG."[29]

---

[24] *Id*. at pg. 23.

[25] *Id*. at pg. 18.

[26] *See, e.g.*, Frank Chaparro, *The Game is promoting the initial coin offering of a company owned by a former Miss Iowa who is looking to usher in the weed revolution*, BusinessInsider (Aug. 11, 2017, 5:14 p.m.), http://www.businessinsider.com/rapper-the-game-promoting-weed-company-ico-2017-8.

[27] *Supra*, note 5 at pg. 12.

[28] *Id*. at pg. 14.

[29] *Id*. at pg. 8.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

40.     Similarly, on September 3, 2017, a publication named "NowThis Weed" published a video interview with Defendant VerSteeg on Facebook, which Defendants subsequently reposted on Defendant Paragon's Facebook page on the same day.[30]  Following are five screens captures from this video—each which stated "SOURCE: Paragon"—that clearly exhibit Defendants' intention to market the Paragon ICO and PRG Tokens as investment opportunities:



---

[30] *See* Paragon Coin, *Now This Weed's video*, Facebook (Sept. 3, 2017), https://www.facebook.com/paragoncoin/posts/1924685191113339.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24
25



26
27
28

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24



25
26
27
28

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

41.     Similarly, the Whitepaper stated, "PRG is designed to appreciate in value as our solutions are adopted throughout the cannabis industry and around the world.  Our model incentivizes PRG owners to hold their tokens as long term [sic] growth assets . . . ."[31]

42.     Indeed, Defendants even stated they would create a separate fund of PRG Tokens that would be specifically earmarked for manipulating and artificially controlling the price of PRG Tokens. Specifically, the Whitepaper stated that "40,000,000 [PRG] tokens [would be] allotted for Paragon controlled reserve to maintain price support of the PRG Tokens."[32]  The "Controlled Reserve Fund" would have "two core functions to keep PRG stable."[33]

43.     The "Controlled Reserve Fund" would be used to "Release PRG to the markets if PRG deflates too fast and pushes token prices up too rapidly" or "[b]uy PRG from the market if PRG price devalues too much."[34]  Defendants elaborated on the second "core function" by explaining that "PRG may become subject to excessive sell volume resulting in a significant drop in price.  To counter this, the Reserve Fund can intervene by buying back PRG in an effort to stabilize the market price."[35]

44.     Putting aside the illegality of a scheme to blatantly manipulate the market price of PRG Tokens as a security trading in the marketplace, this intention clearly exhibits Defendants' message that the PRG Tokens would be appreciating in value, and thus, represented an investment opportunity.

45.     In addition, the Whitepaper's "Risks" section was almost entirely related to the risk that the PRG Token might lose its value or not have adequate liquidity.  To quote but a few, the Whitepaper stated:

- "You should carefully consider and evaluate each of the following risk factors . . . the trading price of PRG Tokens (in the case where they are listed on a cryptocurrency exchange) could decline due to any of these considerations,

---

[31] *Supra*, note 5 at pg. 31.

[32] *Id*. at pg. 13.

[33] *Id*. at pg. 30.

[34] *Id*. at pg. 31.

[35] *Id*.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

uncertainties or material risks, and you may lose all or part of your PRG Tokens."[36]

- "No one is obliged to purchase any PRG Tokens from any holder of the PRG Token, including the purchasers, nor does anyone guarantee the liquidity or market price of PRG Tokens to any extent at any time."[37]

- "[T]he Company cannot ensure that there will be any demand or market for PRG Tokens, or that the Purchase Price is indicative of the market price of PRG Tokens after they have been made available for trading on a cryptocurrency exchange."[38]

- "Further sales or issuance of the PRG Tokens could materially and adversely affect the market price of the PRG Tokens."[39]

- "Negative publicity may materially and adversely affect the price of the PRG Tokens."[40]

- "[T]he development of the PARAGONCOIN platform and launch of the anticipated PARAGONCOIN future business lines may not be completed and there is no assurance that it will be launched at all.  As such, distributed PRG Tokens may hold little worth or value."[41]

- "Any events or circumstances which adversely affect ParagonCoin, Inc. . . . would correspondingly have an impact on the utility, liquidity, and the trading price of the PRG Tokens."[42]

46.    As is obvious, the "risks" were primarily tailored to the risks that Paragon ICO participants would lose their investments due to the PRG Token's loss in value or lack of liquidity.

47.    In short, as stated in a review of the Paragon ICO conducted by Picolo Research:[43]

1. The token sale structure is extremely complicated

2. A significant amount of funds are used to 'control the token price'

3. There is no detailed 'use of proceeds' or budget

4. The team have not communicated a clear commercial strategy as there are 5 completely different segments

---

[36] *Id*. at pg. 37.

[37] *Id*.

[38] *Id*. at pg. 38.

[39] *Id*.

[40] *Id*.

[41] *Id*. at pg. 39.

[42] *Id*. at pg. 40.

[43] *See* Picolo Research, *Paragon (PGN) An immutable ledger for the marijuana industry*, (Sept. 7, 2017), https://picoloresearch.com/26/paragon-pgn/attachment.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

5. We believe the use of blockchain within the ecosystem (in this venture) will be limited

6. There is a strong focus on the establishment of Accelerators and Co-working spaces as opposed to the blockchain initiative

7. The management team appear to be using the current market liquidity as a method of financing for something other than the actual concept

8. It is unknown as to what portion of the funds will be held by management, promoters, etc. . . . .

For the reasons listed above, we **believe there is a significant risk associated with this token sale**. If the same structure and offering were presented by a company that did not put such high profile names to it, we would be on the verge of labeling such a token sale as 0 stars.[44]

### PRG Tokens Constitute "Investment Contracts"

48. The facts are indisputable that Defendants participated in the offer and sale of PRG Tokens. Specifically, the Individual Defendants founded Defendant Paragon. "The PARAGONCOIN platform is developed, operated, and maintained by" Defendant Paragon.[45] Given that the Paragon ICO was conducted by Defendant Paragon, through its website, it is indisputable that the Individual Defendants, through Defendant Paragon, controlled and orchestrated Defendant Paragon's actions in conducting the Paragon ICO.

49. Under the federal securities laws, the definition of a security includes an "investment contract." Plaintiff's and the Class' investments of ETH, BTC, LTC, DASH, ZEC, XRP, XMR, ETC, or WAVES constitute an investment of money in an "investment contract."

50. When determining whether a security has been offered and sold, the focus must be on the economic realities underlying the transaction. Here, the economic realities are that Plaintiff and the Class invested their digital cryptocurrencies in order to receive PRG Tokens, which they expected would be worth more than their ETH, BTC, LTC, DASH, ZEC, XRP, XMR, ETC, and/or WAVES investments. Plaintiff's and the Class' investment of such cryptocurrencies constitutes an investment of money for the purposes of determining whether an investment involved a security.

---

[44] *Id.*

[45] *Supra*, note 5 at pg. 38.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

51.     Plaintiff and the Class were investing in a common enterprise with Defendants, as the Paragon ICO investments were pooled under the control of Defendants, and the success of Paragon's "business model"—and thus potential profits stemming from the future valuation of PRG Tokens— was entirely reliant on Defendants' actions.  As explicitly provided in the Paragon Whitepaper:

> The PARAGONCOIN platform is developed, operated, and maintained by ParagonCoin, Inc. Any events or circumstances which adversely affect ParagonCoin, Inc. or any of its successor operating entities (collectively refered to herein as "ParagonCoin, Inc.") may have a corresponding adverse effect on the PARAGONCOIN platform and any future business lines.  Such adverse effects would correspondingly have an impact on the utility, liquidity, and the trading price of the PRG Tokens.[46]

52.     Additionally, the Whitepaper stated:

> ParagonCoin, Inc. may be materially and adversely affected if it fails to effectively manage its business operations as its business develops and evolves, which would have a direct impact on its ability to maintain the PARAGONCOIN platform and/or launch any future business lines.[47]

53.     Accordingly, it is obvious that any success from creating the PRG Token and future potential increases to the PRG Token's value was, and continues to be, entirely dependent on Defendants' actions.

***Necessity for Judicial Intervention***

54.     On July 25, 2017, the SEC issued a report on "the DAO," which offered tokens for sale online, in which the SEC advised those using "distributed ledger or blockchain-enabled means for capital raising, to take appropriate steps to ensure compliance" with the federal securities laws, and stated that "[a]ll securities offered and sold in the United States must be registered with the Commission . . ." or qualify for an exemption from registration.  On the same day, the SEC issued an investor bulletin urging caution when investing in ICOs and to be mindful that promoters and initial sellers that lead buyers of tokens to expect a return on their investment or participate in shared returns provided by the project may be offering a security for sale.

---

[46] *Id*. at pg. 40.

[47] *Id*.

Case No. 18-cv-00671
CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

55.    On September 29, 2017, the Wall Street Journal reported Chairman Clayton as stating "I have yet to see an ICO that doesn't have a sufficient number of hallmarks of a security."  This statement sums up the core issue here quite succinctly.  Digital currencies are a relatively new phenomenon and various parties are taking advantage of the time it takes for regulatory agencies to address new developments to engage in unlawful conduct with near impunity, as Defendants have here by raising tens of millions of dollars with promises of profits and revolutionizing the cannabis industry.

56.    On December 1, 2017, the SEC filed a complaint against PlexCorps for selling unregistered securities in connection with the "PlexCoin Token" ICO.  Similarly, on December 11, 2017, the SEC announced that it had shut down an ICO that Munchee, Inc., a California-based online food review company, had been planning on conducting.

57.    On January 4, 2017, the Texas State Securities Board issued an Emergency Cease and Desist Order against BitConnect, a U.K. based company planning on conducting an initial coin offering. More recently, on January 25, 2017, the SEC halted an allegedly fraudulent initial coin offering by securing a court-ordered emergency asset freeze over AriseBank, and its co-founders, which included appointing a receiver over their assets.  It is clear from recent events that the rampant disregard of the federal securities laws taking place in connection with cryptocurrency offerings has been noted by regulatory agencies, including the SEC and state regulators.  In the meantime, investors like Plaintiff and the Class have already been wrongfully deprived of the protections of the federal securities laws by Defendants.  Fortunately, the private right of action provided for by Section 12(a)(1) of the Securities Act was created for just this type of situation, and provides strict liability for the sale of unregistered securities.

## CLAIMS FOR RELIEF

## COUNT I

### Claim for Violation of Section 12(a)(1) of the Securities Act
### Against All Defendants

58.    Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

59.    Section 12(a)(1) grants Plaintiff a private right of action against any person who offers or sells a security in violation of Section 5, and states that such person,

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

Shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

60.     From approximately August 15, 2017 through October 16, 2017, in connection with the Paragon ICO, Defendants unlawfully made use of means or instruments of transportation or communication in interstate commerce or of the mails for the purposes of offering, selling, or delivering unregistered securities in direct violation of the Securities Act.

61.     The Paragon ICO was a sale of unregistered securities under controlling federal law. PRG Tokens exhibit the following particular hallmarks of a security under the *Howey* test: (a) in order to receive any PRG Tokens an investment of money, in the form of BTC, ETH, and/or other digital currencies was required; (b) the investment of money was made into the common enterprise that is Defendant Paragon and its potential future "business lines"; and (c) the success of the investment and any potential returns on such was entirely reliant on Defendants' ability to launch the "PARAGONCOIN platform" and related "business lines."

62.     As such, Defendants have participated in the offer and sale of unregistered securities in violation of the Securities Act, and are liable to Plaintiff and the Class for rescission and/or compensatory damages.

## COUNT II

### Claim for Violation of Section 15(a) of the Securities Act
### Against All Defendants

63.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

64.     Due to their ownership in and control over Defendant Paragon, the Individual Defendants acted as controlling persons of Defendant Paragon within the meaning of Section 15(a) of the Securities Act as alleged herein.  By virtue of their positions as officers and/or directors and participation in and/or awareness of Defendant Paragon's operations, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making relating to the Paragon ICO, including the decision to engage in the sale of unregistered securities via the Paragon ICO.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

65.     By virtue of the foregoing, the Individual Defendants are liable to Plaintiff and the Class as control persons of Defendant Paragon under Section 15(a) of the Securities Act.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.     Declaring that Defendants offered and sold unregistered securities in violation of the federal securities laws;

C.     Declaring Defendants are liable to Plaintiff and the Class under Sections 12(a)(1) and/or 15(a) of the Securities Act;

D.     Preliminarily enjoining Defendants from making further transfers or dissipations of the investments raised during the Paragon ICO, or using such funds in any further purchases or transactions;

E.     Requiring an accounting of the remaining funds and assets raised from Plaintiff and the Class in connection with the Paragon ICO;

F.     Imposing a constructive trust over the funds and assets rightfully belonging to Plaintiff and the Class;

G.     Ordering rescission of the investments made by Plaintiff and the Class relating to the Paragon ICO and/or compensatory damages;

H.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

I.     Granting such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.


Dated: January 30, 2018                    **LEVI & KORSINSKY, LLP**

By: */s/ Rosemary M. Rivas*
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Eduard Korsinsky (to be admitted *pro hac vice*)
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

Donald J. Enright (to be admitted *pro hac vice*)
Email: denright@zlk.com
John A. Carriel (to be admitted *pro hac vice*)
Email: jcarriel@zlk.com
**LEVI & KORSINSKY, LLP**
1101 30th St., NW, Ste. 115
Washington, DC 20007
Telephone: (202) 524-4292
Facsimile: (202) 333-2121

*Attorneys for Plaintiff Astley Davy*

Case No. 18-cv-00671
CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, Astley Davy,

declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase ParagonCoin that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. I received ParagonCoin in exchange for my investment in the Paragon Coin, Inc initial coin offering. My purchase history is attached in the chart attached hereto as Exhibit A.

5. During the three years prior to the date of this Certification, I have not participated, nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I hereby certify, under penalty of perjury, that the foregoing is true and correct. Executed this 29th day of January, 2018.

Signed:

NAME: Astley Davy

## EXHIBIT A

## ASTLEY DAVY

## PRG TOKEN PURCHASE HISTORY

| Purchase Date | Coin Used (Btc/Eth) | Amount |
|---|---|---|
| 9-21-2017 | BTC | 0.04095 |
| 9-23-2017 | BTC | 0.03975 |
| 9-28-2017 | ETH | 0.57855 |
| 9-30-2017 | BTC | 0.0231 |
| 10-3-2017 | BTC | 0.03495 |
| 10-15-2017 | BTC | 0.04579484 |